**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| PATRÓN SPIRITS INTERNATIONAL AG, a Swiss corporation, and THE PATRÓN SPIRITS COMPANY, a Nevada corporation, | §§§§§ | |
| Plaintiffs, | §§ | |
| v. | §§ | Civil Action No. 4:16-cv-0918 |
| THE REINDEER GROUP, LTD., a New York corporation, and TROY BENTON, a New York resident, | §§§§ | COMPLAINT AND DEMAND FOR JURY TRIAL |
| Defendants. | §§§ | |

## COMPLAINT

Plaintiffs Patrón Spirits International AG ("PSI") and The Patrón Spirits Company

("PSC") (together, "Patrón") file this Complaint against defendants The Reindeer Group, Ltd.

("Reindeer") and Troy Benton ("Benton") for infringement of PSI's trademarks, to recover for

Reindeer's breach of the parties' arrangement, and to prevent Reindeer's unjust enrichment.  In

support thereof, Patron submits the allegations that follow below.

### Nature of the Case

1.      Patrón brings this action to stop Reindeer, a purported advertising agency from (i)

infringing trademarks belonging to PSI and (ii) demanding that PSC pay in full bills that

Reindeer has padded with unsubstantiated and unauthorized charges.

2.      Through its marketing team in Southlake, Texas, PSC used Reindeer's advertising

services to promote PSI's brand until April 30, 2014, when PSC ended the Patrón relationship

with Reindeer.  Since then, Reindeer has used the highly valuable Patrón name and trademarks

belonging to PSI to market Reindeer's own website without Patrón's authorization.  Reindeer's

owner, Troy Benton, owns and controls a web domain that uses the Patrón name and trademarks belonging to PSI, contrary to the terms of Reindeer's arrangement.  PSC has demanded that this domain name be transferred to PSI, but Reindeer has ignored these requests.  For these knowing and unauthorized uses, PSI seeks injunctive and monetary relief for trademark infringement, false advertising, and violation of the Anti-Cybersquatting and Consumer Protection Act ("ACPA").

3.      PSC also seeks relief resulting from Reindeer's overbilling and breaches of the parties' arrangement.  Reindeer overcharged—and PSC overpaid—for half a dozen invoices, resulting in losses of more than $81,000.  Additionally, Reindeer is threatening to collect on three highly inflated invoices seeking payment on fees and expenses that PSC did not authorize and cannot substantiate.  PSC therefore seeks not only damages for overpayment, but also declaratory relief to clarify and resolve the disputed invoices that Reindeer is claiming remain outstanding.

**Parties**

4.      PSI is a Swiss corporation with its principal place of business at Quaistrasse 11, 8200 Schaffhausen, Switzerland.

5.      PSI's wholly owned subsidiary, PSC, is a Nevada corporation with its principal place of business at 6670 S. Valley View Blvd., Las Vegas, Nevada, 89118 and an office in Southlake, Texas.  PSC provides marketing and promotion services to, among other things, assist PSI in developing brand awareness and identifying strategies for new products.

6.      Reindeer is an inactive New York corporation, which, when active, had its principal place of business at Suite 2111, 420 Lexington Avenue, New York, New York 10170. Since January 26, 2011, and for all times relevant to this Complaint, Reindeer's corporate status

has been "Inactive – Dissolution by Proclamation / Annulment of Authority," according to the New York Department of State's Corporation & Business Entity Database. http://www.dos.ny.gov/corps/bus_entity_search.html (last searched on October 4, 2016).

7.      Troy Benton is the founder and president of Reindeer.  On information and belief, Benton exercised and continues to exercise complete control over Reindeer with respect to the facts alleged in this Complaint.  On information and belief, Reindeer did not recognize necessary corporate formalities under New York law as demonstrated by the fact that Reindeer conducted business with PSC for years even after its corporate authority was annulled.   Because Reindeer conducted business with PSC for years as an annulled corporation, Benton is personally liable for Reindeer's debts and conduct.  Benton is also personally liable for all misconduct described below in which he personally participated or had a personal role in directing.  On information and belief, Benton is a New York resident.

## Jurisdiction and Venue

8.      This Court has federal question jurisdiction over the subject matter of this action under 15 U.S.C. §§ 1121 and 1125 and 28 U.S.C. §§ 1331 and 1338, and diversity jurisdiction over PSC's state law claims pursuant to 28 U.S.C. § 1332 because no plaintiff has the same citizenship of any other defendant and, as shown below, the amount in controversy exceeds $75,000.  Alternatively, the Court may exercise supplemental jurisdiction over PSC's state law claims under 28 U.S.C. § 1367.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because PSC maintains an office within this Judicial District, and Reindeer, including Troy Benton and other Reindeer employees, engaged in regular business and communications with, and provided advertising services to, PSC, including PSC employees at PSC's Southlake office, over a period

lasting several years.  As such, a substantial part of the events giving rise to this Complaint occurred in this District.

## Factual Background

### Patrón and PSI's Famous Trademarks

10.     Tequila has been around for generations, but it was not until PSI launched its Patrón tequila brand that consumers were introduced to ultra-premium tequila.  The popularity of the product has achieved enormous success, and its popularity has grown steadily.  PSI's tequila products are currently sold in more than 100 countries across the world.

11.     PSI's success stems from the exceedingly high-quality of its tequila, which is 100 percent agave tequila.  To create its ultra-premium tequila, PSI's founders teamed with a tequila industry veteran to help create a superior product.  Patrón tequilas have been widely recognized for their quality.  In 2004, Patrón tequila became the first spirit ever to receive the Five-Star Diamond Award from the American Academy of Hospitality Sciences.

12.     Patrón tequila is recognized as an iconic brand.  Indeed, the distinctive bottle design has been characterized as "famous" by a major metropolitan newspaper.  Name That Bottle, Chi. Trib., Feb. 10, 2015, § 2, at 1.  Patrón tequila has also been recognized as a "Most Trusted Brand."  The 120 Most-Trusted Brands, Entrepreneur Mag., April 2014.  As the market for Patrón tequila has expanded vastly over the years and it continues to grow, the product continues to be meticulously and carefully produced.

13.     Patrón has been honored with several global industry awards and recognitions, including IMPACT "Hot Brand" Awards, "Growth Brand" awards from the Beverage Information Group, Advertising Age's "Marketing 50" honor, and numerous travel retail accolades, including a "Best Supplier of the Year" Frontier Award.

14.     PSI owns valid, protectable trademarks in, among others, PATRÓN, PATRÓN
SOCIAL CLUB, PATRÓN COCKTAIL LAB, the proprietary shape of its bottles, and the Patrón
bumblebee logo, which is depicted below (collectively, "PSI's marks").

TEQUILA

PATRÓN



15.     In conjunction with PSI's marks, PSI has invested significant effort and funds to
educate the public on the quality of PSI's products and in promoting brand awareness.  As a
result, consumers associate PSI's marks with Patrón; PSI's marks have come to identify the
source of Patrón tequila and to distinguish Patrón tequila from other tequila brands.  Thus, the
marks have acquired distinctiveness.

16.     Because of the superior quality of PSI's products and because of PSI's efforts to
educate the public and promote brand awareness, PSI has built up a valuable reputation and
tremendous goodwill in PSI's marks.

17.     Additionally, PSI owns valid and subsisting registrations with the United States
Patent and Trademark Office for PSI's many marks, including PATRON, design marks for the
shape of its bottles, and the Patrón bumblebee logo.  PSI's trademarks include, but are not
limited to, trademarks with the following registration numbers:

a)     4,723,423
b)     3,469,828
c)     3,129,020
d)     2,661,890
e)     2,388,372
f)     1,989,809

g)    1,809,473
h)    3,007,198
i)    2,147,067

These nine trademarks have been used without proper authorization by Reindeer on Reindeer's website, as discussed further below.

18.    PSI's marks are famous and have become very valuable assets of PSI.

**PSI's Domain Names**

19.    PSI owns several domain names at which it advertises and promotes its well-known brand, including <www.patrontequila.com>,  <www.patronspirits.com>, <patronsocialclub.com>, and <cocktaillab.com>.

20.    Patrón uses these domain names to build and emphasize its brand recognition.

21.    At the domain <cocktaillab.com>, which redirects to <patrontequila.com/cocktails/lab/intro.html>, Patrón helps customers design custom mixed drinks incorporating Patrón spirits through an interactive question and answer session.

**PSC's Engagement of Reindeer**

22.    At times, Patrón uses outside companies, like Reindeer, to help promote its brand. Accordingly, in 2009, PSC engaged Reindeer, an advertising agency, to provide services in support of digital advertising, including on Google and Facebook, conducted by PSC.

23.    The scope of Reindeer's arrangement was determined by the parties' oral and written correspondence and course of dealing.  The parties considered a written agreement, but never executed it.

24.    Under the parties' arrangement, PSC paid Reindeer a set monthly fee.  PSC also paid Reindeer a "media fee," consisting of a 15% commission of the actual media amounts paid by PSC in connection with advertising services provided by Reindeer.

25.    Under the parties' arrangement, Reindeer was required to obtain pre-approval from PSC before incurring any fees or making expenditures on PSC's behalf.  Reindeer was required to issue accurate invoices for its work.  Reindeer was required to provide PSC, upon request, with backup documentation and receipts in support of Reindeer's invoices or expenses.

26.    The parties further agreed that any intellectual property that Reindeer created belonged exclusively to PSI.

27.    Reindeer also agreed that it would not display any work regarding the Patrón brands, nor display the PSI's marks, without Patrón's prior written approval.

**December 2012 Invoice**

28.    Operating under this arrangement, on or around December 11, 2012, Reindeer issued invoice #11201 to PSC.

29.    The charges in invoice #11201 were as follows:

| Description | Net |
|---|---|
| **Patrón Spirits Co.: Facebook and Google Campaign II** | |
| Google Paid Search | $109.904.96 |
| Facebook Ads | $225.443.00 |
| Media Fee | $59.100.00 |
| Results presented in November, 2012 | |
| Total | $394,447.96 |

30.    Reindeer has provided to PSC, at PSC's request, certain backup documentation for the charges in invoice #11201.  PSC, however, has not been able to substantiate the charges in the invoice because Reindeer's backup documentation is incomplete and does not support all of the charges in the invoice.

Furthermore, the media fee in invoice #11201 has not been calculated pursuant to the parties' arrangement. The media fee in invoice #11201 was calculated at a higher rate than the 15% commission of the actual media amounts agreed to by PSC.

31. But invoice #11201 is hardly the only Reindeer overcharge for media fees. There were several other invoices for services supposedly performed in 2012 containing similar instances of overbilling. As a result, Reindeer overcharged PSC for more than $81,000 in media fees.

**Reindeer's Unlawful Conduct Upon Its Termination**

32. In early 2014, PSC informed Reindeer that its services were no longer required beyond April 30, 2014. PSC informed Reindeer that, consistent with the parties' arrangement and course of dealing, any services that Reindeer performed, or any expenses Reindeer incurred, pursuant to their arrangement before April 30, 2014, must be pre-approved in writing by PSC.

33. Instead of winding down its engagement, Reindeer endeavored to pad the PSC invoices before its engagement was over. Upon information and belief, Reindeer took on numerous charges on PSC's behalf, even for activities that PSC did not authorize and for fees incurred after the parties' relationship ended.

34. On or around August 27, 2014, almost four months after PSC terminated Reindeer's engagement, Reindeer issued two invoices (#11249 and #11250) to PSC, claiming that PSC owed Reindeer $624,092.85 in additional charges incurred at the beginning of 2014.

35. Invoice #11249 had the following charges:

| Description | Net |
|---|---|
| **Patrón Digital Media Jan-April** | |
| Facebook | $417,734.28 |
| Google AdWords | $27,139.55 |
| Yahoo Bing | $17,290.26 |
| Reindeer Media Fee | $69,060.00 |
| Total | $531,224.09 |

36.     Reindeer has provided to PSC, at PSC's request, certain backup documentation for the charges in invoice #11249.  PSC, however, has not been able to substantiate the charges in the invoice because Reindeer's backup documentation is incomplete and does not support all of the charges in the invoice.  The invoice also includes charges incurred after Reindeer's engagement ended and charges that PSC did not authorize.

37.     The second invoice Reindeer issued on August 27, 2014, invoice #11250, consisted of a single line item of $92,868.76 for "Patrón Digital CRM & Production."

38.     Although Reindeer provided a breakdown of the charges for invoice #11250, PSC has not been able to verify the vast majority of the charges.

39.     Upon information and belief, the charges in invoice #11250 include Reindeer's overhead costs, including fees for storage units and computer server capacity.

40.     Once Reindeer issued invoice number 11249 and 11250, Reindeer communicated with PSC employees in Southlake, Texas regarding the invoices.

**Reindeer's Unauthorized Use of PSI's Marks**

41.     In late 2015, PSC discovered that—despite its unequivocal termination of Reindeer's service more than a year earlier—Reindeer was (and still is) using PSI's marks on the Reindeer website, and was claiming that Patrón was a current client.  A true and correct copy of Reindeer's webpage is attached as Exhibit A and incorporated herein by reference.  Reindeer's

website prominently displays many of PSI's marks – PATRÓN, PATRÓN SOCIAL CLUB,

PATRÓN COCKTAIL LAB, the proprietary bottle shape, and the Patrón bumblebee logo.  *Id.*

42.     On February 3, 2016, PSC sent Reindeer, through counsel, a letter demanding

Reindeer immediately cease this unauthorized use of PSI's marks on the Reindeer website.  PSC

reiterated its demand to Reindeer in a letter dated April 20, 2016.  No response has been received

to the February 3 or April 20 letters.

43.     To this day, Reindeer continues to display PSI's marks on its website, advertising

that Patrón is a client, although the client relationship ended more than two years ago.

44.     This false advertising has harmed and continues to harm PSI.  Such use deprives

PSI of the right to control its intellectual property, and to exclude unauthorized users—the core

right of such property.  Moreover, Reindeer's use of PSI's marks falsely suggests a connection

between the two brands, which allows Reindeer to reap the benefits of the highly valuable Patrón

name and all of the associated goodwill, but without PSI's permission.  This unauthorized use of

PSI's marks diminishes the exclusivity of the marks, and threatens the marks' source-identifying

significance, and this damage is exceedingly difficult to quantify in monetary terms.

45.     An injunction is therefore necessary to stop the irreparable harm caused by this

unauthorized use of PSI's marks.

46.     But Reindeer's misappropriation of the Patrón brand extends beyond Reindeer's

unauthorized use of the Patrón name on Reindeer's own website.  Through its principal, Troy

Benton, Reindeer has used PSI's marks in a registered internet domain name that Reindeer is

now withholding from PSI.

47.     During its relationship with Reindeer, Reindeer used the domain name

<www.patroncocktaillab.com> as an advertising tool for Patrón.  Contrary to the terms of the

arrangement with Reindeer, Reindeer—through Benton—registered Benton as the owner of the domain <www.patroncocktaillab.com>.  A true and correct copy of the "WhoIs registration" of the <www.patroncocktaillab.com> domain name is attached as Exhibit B and incorporated herein by reference.

48.     When PSC terminated Reindeer's engagement in April of 2014, Reindeer failed to transfer control of the domain name to PSI.

49.     Following discovery of Benton's misconduct, Patrón demanded that the domain name be transferred back to PSI, via a letter sent on April 20, 2016.  Reindeer ignored this request.

50.     To this day, Benton is still listed as the domain's registrant.  *See* Exhibit B.

51.     Accordingly, to obtain much needed relief from Reindeer's and Benton's misconduct, and because neither defendant will respect PSI's rights or the terms of the parties' arrangement, Patrón files this action.

## COUNT I
### By PSI As Against Reindeer and Benton
### Trademark Infringement – 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a)

52.     PSI incorporates by reference paragraphs 1–51 of this Complaint.

53.     PSI owns valid, protectable trademarks in PSI's marks.  PSI has invested significant effort and funds in marketing and promoting Patrón tequilas, as well as other spirits and merchandise sold in conjunction with these trademarks.  As a result of the substantial marketing and promotion for and the significant sales of Patrón tequilas, consumers associate PSI's marks with Patrón.  Thus, PSI's marks that are not inherently distinctive have all acquired distinctiveness through secondary meaning.

54.     In addition to its common law trademark rights, PSI has valid and subsisting registrations for PATRON, the shape of the bottles, and the Patrón bumblebee logo registered with the United States Patent and Trademark Office, including, but not limited to, registrations for the following registration numbers:

|   |   |   |
|---|---|---|
| a) | | 4,723,423 |
| b) | | 3,469,828 |
| c) | | 3,129,020 |
| d) | | 2,661,890 |
| e) | | 2,388,372 |
| f) | | 1,989,809 |
| g) | | 1,809,473 |
| h) | | 3,007,198 |
| i) | | 2,147,067 |

55.     Reindeer has used and continues to use PSI's marks to promote Reindeer's advertising services.

56.     Benton also owns and continues to use the domain name <www.patroncocktaillab.com>.

57.     Reindeer's and Benton's conduct on the Reindeer website <www.reindeercompany.com> has caused and is likely to continue to cause purchasers or others to mistakenly believe that Reindeer is legitimately connected, affiliated or associated with Patrón, or that Patrón approves Reindeer's services, which is not the case.  Consumers who encounter Reindeer's website are likely to incorrectly believe that Reindeer currently is the exclusive provider of advertising services for Patrón.

58.     Furthermore, Benton's conduct on <www.patroncocktaillab.com> has caused and is likely to continue to cause purchasers or others to mistakenly believe that this is an official site legitimately connected, affiliated, or associated with Patrón, which is no longer the case.

59.    Reindeer's actions constitute trademark infringement and false or misleading representations of fact in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

60.    Reindeer's conduct is irreparably damaging and blatant in nature within the meaning of 15 U.S.C. § 1117(a) and will continue to damage PSI unless enjoined by this Court. Accordingly, PSI is without an adequate remedy at law.

61.    As a direct and proximate result of Reindeer's and Benton's infringement, PSI has suffered damages in an amount that is not presently ascertainable.

62.    Upon information and belief, Reindeer's and Benton's acts were in conscious and willful disregard for PSI's rights, and the resulting damage to PSI is such as to warrant the trebling of damages, and an award of attorneys' fees as an exceptional case.

### COUNT II
### By PSI As Against Reindeer
### False Advertising– 15 U.S.C. § 1125(a)(1)(B)

63.    PSI incorporates by reference paragraphs 1–51 of this Complaint.

64.    Reindeer made false and misleading statements of fact about its advertising services, which are sold in interstate commerce.

65.    In its commercial advertising and promotion, Reindeer has disseminated to the public representations that Reindeer is "the agency of record for all digital creative, social and media planning" for Patrón, as shown in <u>Exhibit A</u>.  These statements are false and misrepresent the nature and characteristics of Reindeer's services and commercial activities, constituting false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.    PSI has been injured by these statements, and, unless Reindeer is restrained by this Court, PSI will continue to be injured by these statements and suffer irreparable harm.

67.     As a direct and proximate result of Reindeer's foregoing acts, PSI has suffered and will continue to suffer monetary damages in an amount that is not presently ascertainable.

68.     Upon information and belief, Reindeer's acts were in conscious and willful disregard for PSI's rights, and the resulting damage to PSI is such as to warrant the trebling of damages in order to provide just compensation.

**COUNT III**
**By PSI As Against Benton**
**Violation of the ACPA– 15 U.S.C. § 1125(d)**

69.     PSI incorporates by reference paragraphs 1–51 of this Complaint.

70.     Benton registered the domain name <www.patroncocktaillab.com> because he had a bad faith intent to profit from PSI's marks.  That bad faith intent is evident in several ways, including the following facts:

  a.   Benton registered a domain name in his own name, without PSI's authorization, that used PSI's marks.

  b.   The domain name does not use Benton's name, and cannot be used to identify him.

  c.   Benton had never personally used the Patrón name in the bona fide offering of any goods—at least, not with PSI's permission.

  d.   Benton's registration of a domain name using "Patrón" is not nominal fair use, but the infringement of those marks because the registration uses distinctive marks belonging to PSI, but without PSI's permission.

  e.   The contact information Benton used to apply for the registration is incorrect; the address listed as being for Reindeer is not Reindeer's address.  And Benton has intentionally failed to maintain accurate contact information for the registration.

  f.   PSI's marks that Benton incorporated into the disputed domain name are registered trademarks, and are therefore inherently distinctive.

71.     PSI's marks were distinctive at the time of their registration as noted by the registration certificates for each mark.  Moreover, PSI's marks were famous marks at the time

Benton registered them in the domain name at issue, and the marks Benton selected for the domain name registration are identical to and dilutive of PSI's marks.

72.     As a result of Benton's unauthorized, bad-faith registration of the domain name <www.patroncocktaillab.com>, PSI cannot use its own marks to register the same domain or promote its brand through such use.

73.     PSI therefore seeks all damages resulting from such conduct, as well as an order from the Court requiring Benton to transfer the domain name to PSI.

**COUNT IV**
**By PSI As Against Reindeer and Benton**
**Trademark Infringement and Unfair Competition– Texas Common Law**

74.     PSI incorporates by reference paragraphs 1–51 of this Complaint.

75.     Because of PSI's significant use and promotion of PSI's marks, consumers associate and recognize PSI's marks as representing a single source of tequila and other goods, and therefore the Patrón marks are protectable at common law.

76.     PSI's marks are all inherently distinctive or have acquired distinctiveness.

77.     Reindeer's use of PSI's marks in connection with Reindeer's advertising services is likely to cause confusion as to Reindeer's affiliation, connection or association with Patrón or Patrón's approval of Reindeer's services.  Consumers who see Reindeer's website will be likely to believe the false statements that Reindeer serves as the sole advertising agency for Patrón, all to the detriment of PSI.  Such actions constitute trademark infringement and unfair competition at common law.

78.     Furthermore, Benton's use of PSI's marks on <www.patroncocktaillab.com> and continued maintenance of this site without Patrón's consent is likely to cause confusion as to whether this site is indeed sponsored by or affiliated with Patrón.  As PSI currently has no

control over the domain, this website is not in any way affiliated with Patrón, and as such, PSI cannot ensure the quality of the website is up to its standards, or answer any customer complaints about the website.

79.     By reason of Reindeer's and Benton's actions alleged herein, PSI has suffered, and will continue to suffer, irreparable injury to its rights and suffer substantial loss of goodwill and value in PSI's marks unless and until Reindeer and Benton are enjoined from continuing their wrongful acts.

80.     As a result of Reindeer's and Benton's acts of trademark infringement and unfair competition, PSI has suffered and will continue to suffer monetary damages in an amount that is not presently ascertainable but will be established at trial.

### COUNT V
### By PSC As Against Reindeer
### Breach of the Arrangement

81.     PSC incorporates by reference paragraphs 1–51 of this Complaint.

82.     PSC and Reindeer entered into a binding arrangement determined by their oral and written correspondence and their course of dealing.

83.     Under the arrangement, PSC paid Reindeer a "media fee" consisting of a 15% commission of the actual media amounts paid by PSC in connection with Reindeer's advertising services.

84.     Under the arrangement, Reindeer was obligated to obtain PSC's written, pre-approval before incurring any fees or making expenditures on PSC's behalf.

85.     Under the arrangement, Reindeer was required to issue accurate invoices for its work.

86.     Under the arrangement, Reindeer was also required to provide PSC, upon request, with backup documentation and receipts in support of Reindeer's invoices or expenses.

87.     Under the arrangement, all intellectual property generated from Reindeer's engagement was owned solely and exclusively by PSI.  Reindeer was permitted to display its work with regard to the Patrón brands only with prior written approval.

88.     Reindeer breached the arrangement on numerous occasions by issuing padded invoices to PSC and overcharging for the "media fee"; incurring fees or making expenditures on PSC's behalf for certain projects and work without obtaining PSC's written approval in advance; failing to provide complete, backup documentation and receipts in support of invoice number 11201, 11249, and 11250; owning and controlling an internet domain belonging to PSI; and using PSI's marks without prior written approval.

89.     PSC is entitled to damages as a result of Reindeer's material breaches of the arrangement.

90.     PSC is also entitled to attorneys' fees under Texas Civil Practice & Remedies Code § 38.001.

### COUNT VII
### By PSC As Against Reindeer
### Money Had and Received

91.     PSC incorporates by reference paragraphs 1–51 of this Complaint.

92.     Because Reindeer overcharged PSC for services, and because PSC paid those inflated charges, Reindeer holds money that in equity and good conscience belongs to PSC.

93.     PSC is therefore entitled to recover all such sums from Reindeer in order to prevent Reindeer's unjust enrichment.

**Prayer For Relief**

WHEREFORE, Patrón respectfully requests that judgment be entered in its favor against Reindeer and Benton as follows:

(1)     Reindeer's and Benton's conduct be found to have violated and/or continue to violate PSI's rights under Sections 32 and 43 of the Lanham Act, and the common law of the State of Texas.

(a)     Reindeer and its officers, directors, assigns, agents, servants, affiliates, employees, representatives, and all those in privity or acting through or in concert with them, including Benton, be preliminarily and permanently enjoined from using, in connection with the promotion, advertising or offering of services in connection with defendant's business, PSI's marks, or any other trademark, service mark, name, logo, or source designation of any kind that is confusingly similar to any of PSI's marks;

(b)     Reindeer and Benton be enjoined from representing in any manner or by any method whatsoever, that services provided by Reindeer are approved or authorized by plaintiffs or otherwise taking any action likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Reindeer, Benton, and Patrón; and

(c)     Reindeer and Benton be enjoined from engaging in false advertising.

(2)     Patrón to recover all damages, including punitive or exemplary damages, it has sustained as a result of Reindeer's and Benton's conduct.

(3)     Reindeer's and Benton's acts be found to have been performed knowingly, deliberately, and with the intent to trade upon the goodwill of Patrón and that such damages awarded to PSI be trebled.

(4)     Reindeer and its directors, officers, assigns, agents, servants, affiliates, employees, and representatives, including Benton, be directed to remove all references to Patrón

and PSI's marks from Reindeer's website and to destroy any other materials used to advertise Reindeer's business using the PSI's marks.

(5)     Reindeer and Benton be required to file with the Court and to serve upon counsel for Patrón a written report, under oath, setting forth in detail the manner and form in which Reindeer and Benton have complied with the injunction issued by the Court.

(6)     Reindeer and Benton be required to engage in corrective advertising to mitigate the damage done to PSI.

(7)     Benton be required to transfer the domain <www.patroncocktaillab.com> to PSI.

(8)     Reindeer's conduct be found to have breached the arrangement between PSC and Reindeer.

(9)     The Court enter a declaratory judgment that:

(a)     The media fee is 15% of the actual media amounts paid by PSC under the parties' arrangement,

(b)     Reindeer is not entitled to reimbursement for any services it claims it provided after PSC terminated the relationship on April 30, 2014,

(c)     Reindeer is not entitled to reimbursement for any services that PSC did not authorize in writing in advance, and

(d)     Reindeer is not entitled to reimbursement for any charges it claims it incurred on PSC's behalf for which it cannot provide supporting documentation.

(10)    The Court order Reindeer to perform an accounting of all invoices it issued to PSC over the course of its multi-year engagement.

(11)    Reindeer and Benton be ordered to pay Patrón's costs and disbursements, including its reasonable attorneys' fees, court costs, and prejudgment and post-judgment interest.

(12)    Such other and further relief that the Court finds just and reasonable.


Date:__October 5, 2016_____                    Respectfully submitted,


                                                     /s/ Joshua J. Bennett_____
                                                     Joshua J. Bennett
                                                     Texas Bar No. 24059444
                                                     jbennett@carterscholer.com
                                                     Dyan M. House
                                                     Texas Bar No. 24036923
                                                     dhouse@carterscholer.com
                                                     **CARTER SCHOLER ARNETT HAMADA &
                                                     MOCKLER, PLLC**
                                                     8150 N. Central Expy, Suite 500
                                                     Dallas, Texas 75206
                                                     T: 214-550-8188 | F: 214-550-8185

                                                     **ATTORNEYS FOR PLAINTIFFS**